**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH R. LORDAN, SB# 265610
  E-Mail: Joseph.Lordan@lewisbrisbois.com
JONATHAN D. MARTIN, SB# 188744
  E-Mail: Jonathan.Martin@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant ZOOMDATA, INC.

**APARICIO LAW FIRM**
MICHAEL A. APARICIO, SB# 206300
  E-Mail: mike@aparciolawfirm.com
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel. & Fax: 415.429.0810

Attorneys for Plaintiff DEAN FOX

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| DEAN FOX,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ZOOMDATA, INC., a Delaware Corporation, and DOES 1-25,<br><br>　　　　　Defendant. | CASE NO. 4:20cv-01463-JSW<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>**Date: June 5, 2020**<br>**Time: 11:00 a.m.**<br>**Courtroom: 5, 2nd floor**<br><br>Trial Date:　　None Set |

　　　　The parties to the above-titled action submit this Joint Case Management Statement and [Proposed] Order pursuant to the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9(a).

**1.　Jurisdiction and Service**

　　　　Plaintiff filed the instant action in the Superior Court of California, County of San Mateo. Defendant Zoomdata, Inc. removed the action based on diversity (28 U.S.C. § 1332). Venue is proper in this District pursuant to 28 U.S.C. § 1441(a).

/ / /

2. **Facts**

Plaintiff was in sales for Zoomdata from April 2016 until his constructive discharge at the end of November 2017. Zoomdata sells "big data" business analytics. Plaintiff's "territory" was all of Asia. Almost immediately Plaintiff began working on a very large deal with a company known as Datases, sometimes known as StrategyCore, to eventually create an exclusive distributorship in Asia. In January 2017, Plaintiff closed the deal, worth $3,000,000 on its face, over the course of at least 24 months.

Under the Zoomdata commission agreement, the commission was owed when "booked." Further, because Plaintiff sold a "multi-year deal" that was not paid up front, the Zoomdata commission agreement provided that Plaintiff would be paid an additional 25% on the value of the first year of the contract, but no commission on the second and subsequent years (the "out years"). Zoomdata paid only the standard commission rate and failed to pay the additional 25% for Plaintiff's sale of a "multi-year" deal. Additionally, Zoomdata paid the concededly due amount late, in violation of the California Labor Code.

Defendant has taken the position that it did not pay the 25% additional commission because Datases never paid for the second year. But Datases continues as a customer to this day, and Plaintiff asserts that if Datases did not pay on the contract Plaintiff sold, it is because Zoomdata renegotiated the deal, presumably to its favor.

After Plaintiff complained to top management about not being paid the 25% additional commission, Zoomdata executives began treating Plaintiff differently and the relationship soured. Plaintiff went from being the company's "Top Sales Gun" for 2017 to persona non grata. Plaintiff was not given the support he needed to continue to sell Zoomdata's products and interfered with his ability to earn commissions, including by thereafter requiring Plaintiff to spend substantial amounts of time on non-commissions-producing activities such as assisting the CEO seek funding for the company, for a period of 2-3 months. Plaintiff could see his standing and success was in jeopardy as a result of Zoomdata's actions and felt he had no reasonable choice but to resign. Plaintiff was classified by Zoomdata as "exempt" from overtime presumably under the "outside sales" exemption, although he did not meet the requirements of any of the exemptions. In

4814-6510-6366.1                                    2                                    4:20cv-01463-JSW
JOINT CASE MANAGEMENT STATEMENTAND [PROPOSED] ORDER

particular, Plaintiff regularly worked "inside sales" in that he worked at the regularly worked either at the company's offices or at his home office as permitted by Zoomdata. Plaintiff regularly worked 60-90 hour weeks, often 7 or more days straight, and without any overtime compensation and often without being able to take regular breaks.

Defendant disputes Plaintiff's claims and allegations. Defendant contends that Plaintiff was paid the commissions that he was owed pursuant to the plain terms of the applicable commission plan, and that Plaintiff was properly treated as exempt from overtime requirements. Defendant also disputes the number of hours Plaintiff claims he worked. Further, Defendant asserts that Plaintiff's wrongful termination claim is time-barred, and that even if it is not time-barred, Plaintiff was not constructively discharged (which is the basis of the claim) but rather resigned his employment of his own free will.

3. **Legal Issues**

Plaintiff's claims in the current Complaint are based around three concepts—breach of commissions agreement, unpaid overtime and other wage and hour violations, and wrongful termination. The principal legal issues are:

- Zoomdata's failure to pay additional commissions attributable to the "out years" of the Datases deal was both a breach of contract and a violation of California Labor Code, since earned commissions are wages under California law.
- Zoomdata paid the concededly-due wages (the first year of the Datases deal) in an untimely manner under the contract, thereby violating the California Labor Code § 204.
- Zoomdata misclassified Plaintiff as "exempt" and failed to pay overtime, double-time, and related statutory wages.
- Plaintiff's complaints about not being paid the extra 25% resulted in his wrongful constructive discharge in violation of public policy (retaliation).
- Zoomdata failed to pay Plaintiff the wages owed upon termination, thereby requiring payment of waiting time penalties.

///

In the anticipated First Amended Complaint, Plaintiff will assert that by renegotiating the Datases deal, Zoomdata acted to deprive Plaintiff of the benefit of the additional commission. In other words, since Zoomdata claims the additional 25% was excused because Datases never paid, had Zoomdata not interfered with that contract Datases would have paid and then Zoomdata would have to have paid the additional 25%.

Among the legal issues Defendant identifies are:

1. Whether Plaintiff was properly classified as exempt pursuant to the California Labor Code and/or Industrial Wage Orders.

2. Whether Plaintiff was subjected to intolerable working conditions such that he was subjected to a constructive discharge.

3. Whether Plaintiff's alleged constructive discharge occurred more than two years prior to the filing of this lawsuit, such that his wrongful termination claim is time-barred.

**4.  Motions**

No motions are currently pending. Plaintiff may file a motion for leave to amend his complaint (as described in the next paragraph), if the parties do not stipulate to such an amendment.

Plaintiff may file a motion for partial summary judgment as to the interpretation of the commissions contract. Plaintiff may file a motion for judgment on the pleadings as to defenses asserted by Defendant that have no alleged factual support and do not meet the applicable pleading standard.

Defendant may file a motion for complete or partial summary judgment depending on the facts developed in discovery.

**5.  Amendment of Pleadings**

Plaintiff may file a motion for leave to amend his complaint to add a claim for breach of the covenant of good faith and fair dealing and supporting allegations, and potentially additional wage and hour claims arising out of the same facts already in the Complaint. The parties will meet and confer whether to stipulate to such an amendment.

///

6. **Evidence Preservation**

The parties have reviewed this Court's Guidelines Relating to the Discovery of Electronically-Stored Information ("ESI"). The Parties have met and conferred per Rule 26(f) regarding reasonable and proportional steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. **Disclosures**

This case is within the operation of this Court's General Order 71: Initial Discovery Protocols for Employment Cases Alleging Adverse Action ("the Protocols"). The parties have provided their disclosures pursuant to the Protocols, identifying witnesses and producing documents relating to the claims and defenses.

8. **Discovery**

   a. **Status and Scope of Discovery**

Other than their disclosures pursuant to the Protocols, the parties have not yet conducted discovery. Plaintiff has identified approximately six individuals whose depositions he intends to take; at least two of them may be located abroad. Plaintiff may also take corporate depositions pursuant to F.R.C.P. 30(b)(6). Defendant will likely need, and thus requests, more than one day to conduct and complete Plaintiff's deposition. Plaintiff is open to more than one day of deposition and therefore the parties will likely be able to stipulate without the need for intervention by the Court. Defendant may additionally depose a limited number of third parties as appropriate. The parties also intend to serve interrogatories, requests for production of documents, and/or requests for admission within the limitations set forth in the Federal Rules of Civil Procedure.

   b. **Rule 26(a) Initial Disclosures**

This matter is within the scope of the Protocols for Employment Cases, which specifically provide that its obligations supersedes the parties' obligations otherwise under Rule 26(a)(1).

   c. **Subjects On Which Discovery May Be Taken**

The parties may conduct discovery regarding the subject commission plan and related wage and hour compliance, Plaintiff's exemption status, Plaintiff's working hours and job duties, the nature of and potential changes to Defendant's Datases transaction that generated the

commission-related issues alleged by Plaintiff, and the timing and circumstances of Plaintiff's alleged constructive discharge, and Plaintiff's overall working experience with Defendant.

### d. When Discovery Should Be Completed

The parties propose a fact discovery cutoff as discussed in section 17 below.

### e. Whether Discovery Should Be Phased or Limited to Particular Issues

The parties are contemplating conducting written discovery first, and then conducting depositions if the case cannot be resolved following written discovery. However, given the potential time that it may take, Plaintiff anticipates undertaking efforts to secure the depositions of individuals and/or entities residing outside the United States as soon as possible and will proceed with such depositions without delay once appropriate arrangements can be made.

### f. Discovery of Electronically Stored Information

The Parties have initially addressed ESI in conjunction with the Court's Checklist For Rule 26(f) Meet And Confer Regarding Electronically Stored Information. The Parties have preliminary determined that the ESI needs of this case are not so complex or extensive that it requires the identification of e-discovery liaisons and detailed ESI preservation and search plans. As an individual, Plaintiff has limited ESI. Defendant is a technology company in the "big data" business analytics business and generally has capabilities that should be more than adequate for the types and scope of ESI the Parties anticipate in this matter. The Parties pledge to engage in robust meet and confer regarding any issue and do not anticipate any discovery disputes at this time.

### g. Changes on Discovery Limitations

No changes to the presumptive limitations on discovery are needed for this matter, except Defendant anticipates that it will need more than one day to conduct and complete Plaintiff's deposition.

## 9. Class Actions

This case is not a class action.

## 10. Related Cases

Counsel for each party is unaware of any related cases or proceedings pending before

another judge of this court, or before another court or administrative body.

11. **Relief**

Plaintiff seeks payment of the additional commissions, together with applicable penalties and interest; overtime based on an estimated 60-90 hours per week of work suffered or permitted by Zoomdata; garden variety emotional distress resulting from his mistreatment by Zoomdata and ultimate wrongful constructive discharge; and back pay and front pay.

Actual damages will be more fully determined through expert testimony. Based on Plaintiff's evaluation to date, the following is a preliminary calculation:

| | |
|---|---|
| Commissions contract damages | Between $48,000-250,000 |
| Overtime (and double-time), based on a range of 60-90 hours per week working. | Approx. $405,000-1,000,000 |
| Unpaid premium wages | TBD |
| Waiting Time Penalties based on a "daily rate" of $1,549.11 | Approx. $46,000 |
| Prejudgment Interest (to date) at 10% CA Rate (diversity) | TBD (estimated at $175,000) |
| Back and Front Pay of combined 5 years based on 2017 earnings | Approx. $1,775,000 |
| Emotional Distress | TBD by the Jury |
| Punitive Damages | TBD by the Jury |
| Attorney's Fees | TBD by the Court |

If liability is established, Defendant contends that damages should be calculated based on the number of overtime and/or double-time hours Plaintiff can establish that he worked, back and front pay as permitted by law subject to any mitigation efforts that were made or should have been made, and contract damages available under the law based on the precise nature of any breach determined by the jury to have occurred.

12. **Settlement and ADR**

The parties have been engaging in informal settlement negotiations, and have recently made significant process in those negotiations. They plan to continue those efforts in the hope of reaching a resolution. If they are ultimately unsuccessful, but have made sufficient progress, the

parties will consider engaging in a form of ADR, likely either private or court-based mediation.

The Parties requested and participated in an ADR Phone Conference on May 26, 2020. As a result of the Conference, the Parties believe referral to an ADR process should be deferred at least 90 days for the Parties to conduct necessary discovery. Given the substantial progress towards settlement already made by the Parties informally, prior to engaging in formal discovery (beyond initial disclosures), the Parties believe inability to reach a settlement at this time will be primarily attributable to the need to conduct discovery.

The parties have complied with ADR Local Rule 3-5(a) and (b), and Certification as required therein have been filed by both parties. Plaintiff is amenable to Early Neutral Evaluation, court mediation and a settlement conference with a magistrate judge.

### 13. Consent to Magistrate Judge For All Purposes

Defendant does not consent to a magistrate judge for all purposes. Absent Defendant's declination, Plaintiff would be open to referral to a magistrate judge for all purposes.

### 14. Other References

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

A partial summary judgment as to the interpretation of the commissions contract at issue would narrow the commissions claims, since the threshold issue is *whether* Plaintiff is entitled to additional commissions under the agreement. If so, the amount is readily calculable and the parties will likely be able to stipulate.

Partial summary judgment as to the defense of exemption as to the overtime claims may narrow the wage and hour issues.

Plaintiff may file a motion for judgment on the pleadings as to defenses asserted by Defendant that are unsupported by factual allegations; or alternatively may file a motion for partial summary judgment as to those defenses to the extent based on matters outside the pleadings.

### 16. Expedited Trial Procedure

The parties do not believe that this case is suitable for the Expedited Trial Procedure of

4814-6510-6366.1     8     4:20cv-01463-JSW
JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER

General Order No. 64 Attachment A.

17. **Scheduling**

The parties propose the following case schedule:

| Fact discovery cutoff: | December 31, 2020 |
| Dispositive motion hearing: | April 9, 2021 |
| Deadline for designation of experts: | May 14, 2021 |
| Pre-trial conference: | September 13, 2021 |
| Trial: | September 27, 2021 |

The parties anticipate that these dates may be subject to adjustment depending on the status of the COVID-19 pandemic, which could limit the availability of the parties, witnesses and/or attorneys, and/or could impede the forward progress of the case such as completion of depositions. As such, the parties suggest that the court set a mid-discovery status conference to assess the parties' progress and make appropriate adjustments to the case schedule.

18. **Trial**

This case will be tried to a jury.  The expected length of the trial is 5-10 days.

19. **Disclosure of Non-Party Interested Entities or Persons**

Both parties have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.  Defendant has identified Logi Analytics, Inc. and Marlin Equity Partners. Plaintiff has stated that he has no interest to report.

20. **Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. **Other Matters**

Plaintiff's Counsel notes that he was previously employed with the law firm Orrick, Herrington & Sutcliffe LLP for many years and was acquainted with the Court, and at some point may have worked on the same matters, albeit indirectly.  Plaintiff's Counsel at first worked as a paralegal in the San Francisco Litigation group starting in 1994 and then moved into the

employment group; was a summer associate in the Menlo Park office in 1997 and 1998, and thereafter joined as an Associate from 2001 to 2013. Plaintiff's Counsel does not believe there is any ground for recusal but makes these disclosures out of an abundance of caution.

DATED: May 29, 2020            LEWIS BRISBOIS BISGAARD & SMITH LLP


By:  */s/ Jonathan D. Martin*
     Joseph R. Lordan
     Jonathan D. Martin
     Attorneys for Defendant ZOOMDATA, INC.


DATED: May 29, 2020            APARICIO LAW FIRM


By:  */s/ Michael A. Aparicio*
     Michael A. Aparicio
     Attorneys for Plaintiff DEAN FOX

**FILER'S ATTESTATION**

I, Jonathan D. Martin, am the ECF user whose identification and password are being used to file this JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

DATED: May 29, 2020                 LEWIS BRISBOIS BISGAARD & SMITH LLP


By:  */s/Jonathan D. Martin*
     Joseph R. Lordan
     Jonathan D, Martin
     Attorneys for Defendant ZOOMDATA, INC.

**CASE MANAGEMENT ORDER**

The above CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the CASE MANAGEMENT ORDER for this case and the parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

**IT IS SO ORDERED.**

DATED: _____, 2020

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT COURT JUDGE